**No. 25-8058**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CRUISE LINES INTERNATIONAL ASSOCIATION, INC., *et al.*,

*Plaintiffs-Appellants*,

and

UNITED STATES OF AMERICA,

*Plaintiff-Intervenor/Appellant*,

v.

GARY S. SUGANUMA, *et al.*,

*Defendants-Appellees*,

On Appeal from the United States District Court
for the District of Hawai'i
No. 1:25-cv-00367-JAO-KJM
Hon. Jill A. Otake

---

**BRIEF OF *AMICUS CURIAE* MULTISTATE TAX COMMISSION IN
SUPPORT OF DEFENDANTS-APPELLEES AND URGING DISMISSAL
OF THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

---

Bruce Fort
*Counsel of Record*
**Application for Admission Pending**

Richard Cram
*Acting Executive Director*

Lila Disque
*Commission Counsel*

Jennifer Stosberg
*Counsel*

Multistate Tax Commission
444 North Capitol Street NW, Suite 425
Washington, DC 20001
(202) 650-0300
bfort@mtc.gov

*Attorneys for* Amicus Curiae
*Multistate Tax Commission*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Multistate Tax Commission states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

    Date:  February 25, 2026

*/s/ Bruce Fort*
Bruce Fort

*Attorney of record for* amicus curiae
*Multistate Tax Commission*

i

## STATEMENT OF AUTHORSHIP AND
## FINANCIAL CONTRIBUTIONS
## (FRAP 29(a)(4)(E))

No counsel for any party authored this brief in whole or in part, and no party,

counsel for a party, or other person—other than *amicus curiae* or its counsel—

made a monetary contribution intended to fund the preparation or submission of

this brief.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ....................................................... i

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ........ ii

TABLE OF AUTHORITIES .....................................................................................v

INTEREST OF THE *AMICUS* ...............................................................................1

INTRODUCTION/SUMMARY OF ARGUMENT....................................................2

ARGUMENT .............................................................................................................4

    I.    The district court (and this court) should not exercise jurisdiction over the federal government's challenge to a state tax imposition on private parties, because doing so would disrupt the states' carefully balanced tax-dispute frameworks, contrary to the Tax Injunction Act and comity. .........................................................................................................4

        A.    The Tax Injunction Act deprives the federal court of jurisdiction over state tax matters. ..............................................5

            1.    The TIA is a jurisdictional bar based on its subject matter, not an entity-based jurisdictional bar; to hold otherwise would defeat the Act's purpose........................5

            2.    The district court's determination that it had jurisdiction over the federal government's challenge to Hawaiʻi's tax imposition was erroneous. ................................................8

            3.    Courts have long recognized a limited exception to the TIA where the government sues to protect itself or its instrumentalities from a state tax; the exception should not be expanded in this case. ..........................................11

            4.    The consequences to the states of adopting an entity-based jurisdictional analysis, as opposed to a subject matter jurisdictional-based analysis would be profound,

and were what Congress sought to avoid in enacting the TIA. ..................................................................................15

    B.    Comity independently bars federal court jurisdiction over the federal government's claims. ....................................................16

II.    Allowing federal jurisdiction over state tax claims based on jurisdiction over federal questions of law would inject chaos into every state's taxing systems. ...........................................................20

CONCLUSION ...................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Polynesia, Inc. v. Freitas,*
742 F.2d 546 (9th Cir. 1984) ...............................................................7

*Alcan Aluminum, Ltd. v. Department of Revenue of Oregon*,
724 F.2d 1294 (7th Cir. 1984) ..............................................................9

*Ark. v. Farm Credit Servs. of Cent. Ark.,*
520 U.S. 821 (1997)............................................................................12

*Boise Artesian Hot & Cold Water Co. v. Boise City,*
213 U.S. 276 (1909) ..................................................................... 17, 18

*Calif. v. Grace Brethren Church*,
457 U.S. 393 (1982)..............................................................................5

*Capitol Indus.-EMI, Inc. v. Bennett,*
681 F.2d 1107 (9th Cir. 1982) ................................................... 8, 9, 10

*Comptroller of Md. v. Wynne*,
575 U.S. 542 (2015)............................................................................15

*Dep't of Emp't v. United States,*
385 U.S. 355 (1966)...................................................................... 12, 14

*Dillon v. Montana,*
634 F.2d 463 (9th Cir. 1980) ..............................................................12

*Dows v. Chicago,*
78 U.S. (11 Wall.) 108 (1871) ............................................................17

*EMI Ltd. v. Bennett*,
738 F.2d 994 (9th Cir. 1984) ................................................................9

*Fair Assessment in Real Estate Ass'n v. McNary,*
454 U.S. 100 (1981)............................................................................18

*Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*,
  493 U.S. 331 (1990)..................................................................................10

*Hous. Auth. of Seattle v. Wash. Dep't of Revenue,*
  629 F.2d 1307 (9th Cir. 1980) ................................................................12

*Levin v. Commerce Energy, Inc.*
  560 U.S. 413 (2010)........................................................................... 16, 17

*Matthews v. Rodgers*,
  284 U.S. 521 (1932).................................................................................17

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,*
  496 U.S. 18 (1990)............................................................................. 15, 18

*Moe v. Confederated Salish & Kootenai Tribes,*
  425 U.S. 463 (1976).................................................................................13

*Murphy v. National Collegiate Athletic Association,*
  584 U.S. 453 (2018).................................................................................22

*Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,*
  515 U.S. 582 (1995).................................................................................16

*Rosewell v. LaSalle Nat'l Bank*,
  450 U.S. 503 (1981)............................................................................. 5, 15

*United States v. Bureau of Revenue of N.M.,*
  291 F.2d 677 (10th Cir. 1961) ................................................................12

*United States v. County of Nassau,*
   79 F. Supp. 2d 190 (E.D.N.Y. 2000) ............................................... 18, 19

*Ex parte Young,*
  209 U. S. 123 (1908)..................................................................................12

*Younger v. Harris*,
  401 U.S. 37 (1971)...................................................................................19

vi

**Statutes**

28 U.S.C. § 1331 ...................................................................... 6, 10, 20

28 U.S.C. § 1341 ............................................................................ *passim*

29 U.S.C. § 1362 ...........................................................................13

49 U.S.C. § 11501 note ................................................................14

Haw. Rev. Stat. § 237D-1 *et seq*. ................................................7

**Legislative Materials**

H.R. Rep. No. 89-952, Pt. VI (1965) .........................................1

Interstate Taxation Act: Hearings on H.R. 11798 and Companion Bills before Special Subcommittee on State Taxation of Interstate Commerce of the House Committee on the Judiciary, 89th Cong., 2d. Sess. (1966) ...................................1

Senate Rep. No. 1035, 75th Cong., 1st Sess. (1937) ................................................14

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3....................................................................15

U.S. Const. art. III, § 1 .............................................................................6

U.S. Const. amend. XIV ........................................................................14

**Other Authorities**

Multistate Tax Compact.............................................................................1

Robert Frost, *Mending Wall*, in *The Poetry of Robert Frost* 33 (Edward Connery Lathem ed., Henry Holt & Co. 1969) .................................................................2

**INTEREST OF THE *AMICUS***

The Multistate Tax Commission (Commission) submits this brief in support of the Defendants-Appellees in this matter.[1]

The Commission is an intergovernmental agency established in 1967 to administer the Multistate Tax Compact. The Compact was enacted in response to concerns that with the growth of the national economy, the lack of uniformity in state taxing systems was unduly burdening interstate commerce.[2] *See, e.g.,* H.R. Rep. No. 89-952, Pt. VI, at 1143 (1965) and Interstate Taxation Act: Hearings on H.R. 11798 and Companion Bills before Special Subcommittee on State Taxation of Interstate Commerce of the House Committee on the Judiciary, 89th Cong., 2d. Sess. (1966) (illustrating the depth and scope of Congressional inquiry into the potential for federal preemption of state tax). The Compact helped to achieve significant reforms in state tax policies while maintaining the states' authority to

---

[1] Counsel for all parties have consented to the filing of this brief.

[2] The purposes of the Compact are to: (1) facilitate proper determination of state and local tax liability of multistate taxpayers, including equitable apportionment of tax bases and settlement of apportionment disputes, (2) promote uniformity or compatibility in significant components of state tax systems, (3) facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of state tax administration, and (4) avoid duplicative taxation. Multistate Tax Compact, Art. I.

set their own tax policies as a central tenet of the right of self-governance.[3]

Our interest in this case arises from our goal of preserving the states' sovereign authority to set tax policies within federal constitutional and statutory limitations, and in protecting that authority from federal interference beyond that which is permitted under the U.S. Constitution and the clear mandate of Congress.

Principles of comity and federalism that are reflected in the Tax Injunction Act, 28 U.S.C. § 1341 (TIA), have successfully guided federal and state relations in sharing concurrent taxing rights for two and a half centuries. The Commission and its members are committed to ensuring that those principles continue to be honored by the federal government and the states alike, as experience has shown that "good fences make good neighbors."[4]

## INTRODUCTION/SUMMARY OF ARGUMENT

This case raises significant concerns because of its potential, if put into broader practice, to upset the division of authority between state and federal taxing realms that is a foundational aspect of our federalism. Equally concerning, any

---

[3] Currently 15 states, including Hawai'i, and the District of Columbia are signatories to the Compact. All 50 states participate in our committees and programs as Compact signatories, Sovereignty members, or Associate members of the Commission. The states are represented in the Commission by the heads of the state agencies charged with administering state taxes.

[4] Robert Frost, *Mending Wall*, in *The Poetry of Robert Frost* 33 (Edward Connery Lathem ed., Henry Holt & Co. 1969)

unnecessary intervention by the federal government into a state tax adjudication threatens to upend the states' carefully balanced judicial and administrative frameworks for resolution of tax disputes.

The Commission supports the arguments set forth in the responsive brief of the Defendants-Appellees in this matter regarding jurisdiction and the inappropriateness of injunctive relief in this case. We write separately to explain why this court should not retain subject matter jurisdiction under principles of comity and federalism that are ingrained into our constitutional system of government and reflected in the TIA.

States rely on integrated systems of assessment, administrative review, alternative dispute resolution, refund procedures, and judicial review to resolve state tax disputes. Those systems protect taxpayers' rights and preserve fiscal predictability. When federal courts become an alternative forum for challenges to assessment, levy, or collection of state taxes—especially through late-stage collateral interventions—those systems are disrupted, and federal courts take on invasive supervisory roles that inevitably will affect the states' policy choices that Congress sought to avoid.

The Commission respectfully submits that this Court should not retain jurisdiction to adjudicate the United States' action to set aside a state tax imposition that does not fall on the federal government itself. The Commission

3

urges this Court to dissolve the injunction pending appeal and remand with instructions to dismiss the federal government's claims.[5]

## ARGUMENT

**I.     The district court (and this court) should not exercise jurisdiction over the federal government's challenge to a state tax imposition on private parties, because doing so would disrupt the states' carefully balanced tax-dispute frameworks, contrary to the Tax Injunction Act and comity.**

The TIA and application of comity principles do not insulate potentially unlawful state taxation from review. Rather, the TIA ensures that review occurs first through the states' established administrative and judicial processes designed to resolve tax disputes while protecting fiscal stability and uniform administration. Allowing federal intervention in a state tax dispute—where neither the federal government nor its instrumentalities is subject to the challenged tax, and where the challenged tax is otherwise subject to established taxpayer remedies in state court—would defeat the purpose of the Tax Injunction Act and violate the constitutional principle of comity. If such an allowance were put into broader practice, the federal courts will become meddlers in unnecessary state taxation oversight, which invites litigants to seek federal intervention to avoid the operation of state tax dispute-resolution frameworks.

---

[5] The Commission is not filing a similar brief in Case No. 25-8057, as we are confident that the proper resolution of this appeal will control the disposition of the preliminary injunction motion in that matter.

### A. The Tax Injunction Act deprives the federal court of jurisdiction over state tax matters.

The TIA provides that the federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

In *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981), the Supreme Court explained the importance of the Tax Injunction Act saying:

> The statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.

450 U.S. at 522 (cleaned up). *Accord, Calif. v. Grace Brethren Church*, 457 U.S. 393, 408 (1982).

### 1. The TIA is a jurisdictional bar based on its subject matter, not an entity-based jurisdictional bar; to hold otherwise would defeat the Act's purpose.

The TIA withdraws federal court jurisdiction over suits that would "enjoin, suspend or restrain the assessment, levy or collection" of state taxes where a plain, speedy, and efficient state remedy exists. 28 U.S.C. § 1341. That limitation does not turn on the identity of the plaintiff, except in the narrow circumstance where the federal government itself or its instrumentality is directly subject to state taxation.

5

No language in the TIA limits its field of operation only to claims brought by *taxpayers*. Otherwise, virtually any person who alleges harm by virtue of a tax imposition on someone else could gain access to federal court to dispute state tax policy. That reading would defeat Congress's intent to limit federal interference with state tax administration. It would allow federal suits concerning state tax disputes by non-taxpayers that the state's own standing rules, exhaustion requirements, and refund procedures would otherwise channel into orderly state processes. Such a reading of the TIA would create a structural bypass around the States' integrated administrative and judicial systems for resolving tax disputes.

Federal district courts are courts of limited jurisdiction under U.S. Const. art. III, § 1, to which Congress has granted jurisdiction to decide questions of law arising from the U.S. Constitution and federal statutes ("federal-question jurisdiction") under 28 U.S.C. § 1331. But the TIA is a clear instance in which Congress chose to limit federal jurisdiction when the subject matter is the attempt to enjoin or restrain a state tax. The Act reflects Congress's judgment that state tax disputes—because of their fiscal and institutional sensitivity—should proceed through state-created mechanisms in the first instance. There is one narrow exception to that rule, discussed below, where the federal government sues to prevent taxation imposed upon itself or its instrumentalities. Outside that context,

the TIA protects not merely state revenue, but the States' carefully calibrated procedures for assessment, review, and judicial correction.

Hawai'i's Act 96 (Session Laws of Hawai'i 2025) extended the reach of its long-standing Transient Activities Tax to cruise ships providing accommodations while in Hawai'i's harbors. *See* Haw. Rev. Stat. 237D *et seq*. The Cruise Lines International Association (taxpayer) filed suit in federal court seeking to enjoin enforcement of the tax and seeking a declaration that the tax was unconstitutional. The taxpayer also alleged that its First Amendment rights were violated by certain notice requirements.

The district court's own analysis found that Hawai'i's tax administration system and its courts provide a "plain, speedy and adequate remedy" for the taxpayer to obtain relief from the tax imposition. This court made a similar finding regarding Hawai'i's tax procedures in *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546 (9th Cir. 1984). The TIA is intended to protect state-law channels from circumvention. Once the State provides adequate review, the federal role is limited—not because federal questions are unimportant in the context of state taxation, but because Congress determined that state institutions are competent to adjudicate them without the federal courts' front-end involvement.

7

**2. The district court's determination that it had jurisdiction over the federal government's challenge to Hawai'i's tax imposition was erroneous.**

The federal government's 11th hour motion to intervene in the proceedings below required the district court to decide multiple and novel jurisdictional and substantive questions before Act 96 was due to go into effect. The federal government's motion to intervene had already been granted by the magistrate court, and it was unclear if the federal government had a right to proceed in Hawai'i's courts.

No district court has faced this precise circumstance before, since, to our knowledge, the federal government has never before sought to intervene in a case where neither the government nor its instrumentalities were subjected to a state tax imposition. In resolving this matter of first impression, the district court concluded that the TIA's jurisdictional bar applied only to taxpayers who had the ability to litigate their claims in state court.

The district court cited a single case, *Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107 (9th Cir. 1982), for the proposition that where "a non-taxpayer cannot challenge taxes through the state's mechanisms" the TIA does not bar a suit in federal court. 1-ER-39. *Capitol Industries* has only been cited on a single previous occasion for that proposition of law in the 44 years since it was decided,

8

in *Alcan Aluminum, Ltd. v. Department of Revenue of Oregon*, 724 F.2d 1294, 1297 (7th Cir. 1984). Both cases arose out of challenges to the states' use of worldwide combined reporting—in which state income tax liability is computed based on the combined incomes of all inter-related domestic and foreign corporations. In *Capitol Industries,* two federal district court cases were filed, one by the domestic subsidiary, Capitol Industries, who was technically the taxpayer, and a second by its foreign parent, EMI, who was not. EMI claimed it had standing because it would suffer an independent injury from its subsidiary, in that the value of its investment in its subsidiary would be reduced if the subsidiary's tax was increased. This Court held that the foreign parent had an independent cause of action that could not be adjudicated in the state courts and thus, federal jurisdiction was not barred by the TIA. 681 F.2d at 1113. In a subsequent case, *EMI Ltd. v. Bennett*, 738 F.2d 994 (9th Cir. 1984), this court determined that EMI did not have jurisprudential standing to maintain a claim against California tax officials.

*Alcan Aluminum, Ltd.* also involved a foreign corporation asserting that, because its domestic subsidiary, Alcan Aluminum Corporation, was the only "taxpayer" with a clear remedy in state court to contest the calculation of tax, the TIA did not bar its federal court action. The 7th Circuit cited *Capitol Industries* in holding that while the TIA did not bar federal jurisdiction, the doctrine of comity did. 724 F.2d at 1297-8.

9

*Capitol Industries* can no longer support the sweeping claim that the TIA is a jurisdictional bar applicable only to taxpayers after *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331 (1990). Once again, the issue was whether a foreign parent of a domestic subsidiary (the taxpayer) could challenge California's worldwide reporting method in federal court, arguing that the diminishment of its investment value in its subsidiary was a separately cognizable injury that could not be litigated in state court. The Supreme Court held that, regardless of whether the foreign parent had stated a cognizable interest, the TIA precluded the foreign parent from bringing a claim in federal court where its domestic subsidiary could challenge the tax assessment. 493 U.S. at 338-340.

Allowing a non-taxpayer exception in this case would establish a template for shifting state tax disputes into federal court whenever any party outside the formal tax-assessment chain could assert federal question jurisdiction under 28 U.S.C. § 1331. Such a result would upset the States' judicial and administrative frameworks for resolving tax disputes—frameworks Congress sought to preserve when it enacted the Tax Injunction Act.

In holding that the tax claims of the Cruise Lines International Association were barred by the TIA, the lower court recognized that the taxpayer had a fair, efficient, and speedy remedy in the state courts. That conclusion reflects the core

10

premise of the TIA: where the State has provided adequate channels for review, federal courts do not intervene to restrain tax collection. The federal government has not shown that the remedy of invalidating the tax through those state-law channels would fail to redress its alleged injury. That remedy—striking down the tax—is, in fact, the only relief it seeks. [6]

### 3. Courts have long recognized a limited exception to the TIA where the government sues to protect itself or its instrumentalities from a state tax; the exception should not be expanded in this case.

The district court also sided with the United States' contention that the TIA does not clearly express Congress' intention to deprive the district courts of jurisdiction over a federal challenge to a state tax. The United States cited *dicta* pulled from several federal cases to the effect that it can maintain a suit in federal court challenging a state tax imposition; it repeats the assertion in its Opening Brief to this court. (OB at 10, fn.3). But in every one of those cases, the actual holdings of the cases were that the TIA does not bar suit where the tax in question was imposed on the federal government itself, or its instrumentalities. *See, e.g., Dep't*

---

[6] The district court also assumed too quickly that if the federal courts were unavailable to the federal government, the government would have no ability to challenge the application of Act 96 until and unless the Supreme Court accepted review. In their brief, the Defendants-Appellees have suggested that the United States may be permitted to intervene in any state court action brought by the taxpayers. Response Brief (RB) at 29; DK 28.1-45.

*of Emp't v. United States,* 385 U.S. 355, 358 (1966) ("[The TIA] does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions."); *Ark. v. Farm Credit Servs. of Cent. Ark.,* 520 U.S. 821 (1997); *Dillon v. Montana,* 634 F.2d 463 (9th Cir. 1980); *Hous. Auth. of Seattle v. Wash. Dep't of Revenue,* 629 F.2d 1307 (9th Cir. 1980).[7]

The "governmental" exception to the TIA's jurisdictional bar is based on the government's interest in preserving its sovereignty *when taxes were imposed on the government itself.* In *Farm Credit Servs.,* the Court explained:

> Enactment of the Tax Injunction Act of 1937 reflects a congressional concern to confine federal-court intervention in state government, a concern prominent after the Court's ruling in *Ex parte Young*, that the Eleventh Amendment is not in all cases a bar to federal-court interference with individual state officers alleged to have acted in violation of federal law.
>
> ***
>
> Where the Government of the United States is a party, of course, the other side of the federal balance must be considered. In our constitutional system the National Government has sovereign interests of its own. The necessity to respect the authority and prerogatives of the National Government underlies the now settled rule that the Tax

---

[7]*United States v. Bureau of Revenue of N.M.,* 291 F.2d 677 (10th Cir. 1961), is not contrary. The court held that where the United States bore the economic burden of a tax, the government should not be presumed to have abrogated its right to defend itself in its own courts when government "…is the real party in interest. If immunity from the state tax exists, it is in *[sic]* behalf of the United States." 291 F.2d at 679.

12

> Injunction Act is not a constraint on federal judicial power *when the United States sues to protect itself and its instrumentalities from state taxation.*

520 U.S. at 826–27. (*cleaned up; emphasis added.*)

This long-recognized implied exception to the TIA's subject matter prohibition for when a state tax imposition falls on the federal government or its instrumentalities is entirely consistent with the principles of federalism and comity upon which the TIA is based. Just as the states' tax liability should not be litigated in federal courts under these principles, the federal government cannot be required to litigate its own liability in state courts. The narrow exception for when the federal government or its instrumentality is subject to the state's tax does not render the TIA's jurisdictional requirements unclear or ambiguous when the tax falls on unrelated private parties with whom the government has no special relationship. In *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463 (1976), the Court declined to extend the federal instrumentality exception to Indian tribes despite their special relationship with the government. The Court held instead that the subsequent passage of 29 U.S.C. § 1362, allowing the tribes to sue in federal court, was intended to create an exception to the TIA. Significantly, the Court rejected the lower court's invitation to carve out an exception to the TIA when a tax imposition falls on a party or entity "in which the United States *has a real and significant interest.*" *Id.* at 471 (emphasis in original). *Moe* thus re-

13

affirmed that the federal instrumentality exception is limited to situations where the challenged state tax falls on the government or its instrumentalities.

The federal government may certainly challenge a state tax in federal court when its own fiscal interests are at stake. *Dep't of Emp't v. United States, supra*. If this limited exception is expanded to any case where the United States asserts a federal interest in how a state tax operates, then it is no longer an exception.

This case squarely raises the question of whether that narrow exception should become a portal by which any statutory or constitutional objection to state taxation may be transferred by the federal government to federal court. If so, the Tax Injunction Act would cease to function as Congress intended—not because Congress amended it,[8] but because federal intervention would make it optional.

---

[8] Congress was explicitly clear when it carved out an exception to the TIA's jurisdictional bar. See, the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. No. 94-210, § 204(a), 90 Stat. 31, 54 (1976) (codified as amended at 49 U.S.C. § 11501 note; formerly codified at 45 U.S.C. § 801 et seq.) (authorizing railroads to challenge state tax assessments in federal court, "…notwithstanding 28 U.S.C. § 1341").

**4. The consequences to the states of adopting an entity-based jurisdictional analysis, as opposed to a subject matter jurisdictional-based analysis would be profound, and were what Congress sought to avoid in enacting the TIA.[9]**

Interpreting the TIA to allow non-taxpayers to sue in federal court would open the door to any claim that a tax impinges on a constitutional right or violates a federal statute.

Nearly every state tax dispute could implicate some federal constitutional or statutory issue—after all, taxes are a "deprivation of property" subject to the Due Process Clause, U.S. Const. amend. XIV. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 36 (1990). Many tax impositions also touch on interstate commerce, triggering scrutiny under the "dormant" aspects of the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, as evidenced by the hundreds of U.S. Supreme Court cases to have considered the issue. *See, e.g., Comptroller of Md. v. Wynne*, 575 U.S. 542, 549-554 (2015) (describing the Court's evolving

---

[9] See *Rosewell, supra* at 523, citing Senate Report N. 1035 (75th Cong., 1st Sess. (1937):

> It is the common practice for statutes of the various States to forbid actions in State courts to enjoin the collection of State and county taxes…and these statutes generally provide that taxpayers may contest their taxes only in refund actions after payment under protest. This type of State legislation makes it possible for the States and their various agencies to survive while long, drawn-out tax litigation is in progress.

15

commerce clause jurisprudence.) If federal-question jurisdiction alone were sufficient to overcome the TIA, federal courts would become parallel forums for routine tax administration disputes.

Jurisdiction would depend on arbitrary executive-branch litigation choices. Federal courts would be drawn into meddling supervisory roles over state fiscal systems. Predictability would erode with each change of administration.

State tax systems depend on coordinated administrative and judicial processes for comprehensive and uniform resolution of tax disputes. Fragmented federal intervention would disrupt that balance.

Congress enacted the TIA precisely to avoid that result.

**B.** **Comity independently bars federal court jurisdiction over the federal government's claims.**

While the TIA has its roots in the doctrine of comity, the TIA alone does not set the limit on federal jurisdiction over state tax matters. *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,* 515 U.S. 582, 590 (1995). Comity is concerned with broader structural implications of our federal system of government. In *Levin v. Commerce Energy, Inc.,* 560 U.S. 413 (2010), the court held that although a taxpayer's challenge to tax benefits afforded to a competitor were not barred by the Tax Injunction Act, comity considerations nonetheless meant the suit could not be maintained in federal court. The U.S. Supreme Court

16

wrote in *Levin*:

> The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. The doctrine reflects: a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.
>
> Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity. For "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Dows v. Chicago*, 78 U.S. (11 Wall.) 108, 110 (1871).

*Id.* at 421-422 (*cleaned up*).

In *Levin*, the Court cited *Matthews v. Rodgers*, 284 U.S. 521, 525-526

(1932) for the proposition that:

> a scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.

*Id*. at 422.

The Supreme Court's admonitions that the federal courts should refrain from interfering with the operation of state taxing regimes where a remedy is available in state court are not unique to these cases. In *Boise Artesian Hot & Cold Water Co. v. Boise City,* 213 U.S. 276 (1909), the Supreme Court held that injunctive

17

relief against a tax imposition could not be obtained in the federal courts where the state courts could provide an adequate remedy:

> An examination of the decisions of this Court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused it to refrain from so doing in all cases where the federal rights of the persons could otherwise be preserved unimpaired.

*Id.* at 282.

In *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 116 (1981), the Supreme Court cited comity and federalism principles in holding that Congress did not intend to allow damages claims against state tax officials under 42 U.S.C. § 1983. In *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18 (1990), the Court emphasized the importance of allowing states flexibility in crafting remedies when a state tax imposition is declared unconstitutional.

To our knowledge, only one federal court decision, *United States v. County of Nassau,* 79 F. Supp. 2d 190 (E.D.N.Y. 2000), has ever considered the application of comity to a claim brought by the federal government seeking to invalidate a state tax where neither the government, nor a party with a special relationship to the government, such as a sitting Member of Congress, or active duty member of the military, nor a federal instrumentality, is subject to a state tax imposition.

18

In *Nassau County*, the federal government sued for injunctive relief against the county alleging that the county's system for calculating property values disfavored those living in minority neighborhoods, in violation of due process. The district court dismissed the case on comity and TIA grounds to correctly shut down the federal government's attempt to assert involvement in a purely state tax policy dispute. While *Nassau County* was quickly dismissed and not appealed, the case is a stark example of what kinds of political disputes the federal government could interject itself into without the bar of the TIA.

The federal government has presumably declined intervention in state tax cases until now not only because of the TIA but also out of respect for "Our Federalism,"[10] as reflected in the Constitution, including its 10th and 11th Amendments.

Comity is a constitutional imperative, but it is also a pragmatic inquiry, requiring a careful weighing of state and federal sovereignty concerns. In order to

---

[10] *Younger v. Harris*, 401 U.S. 37 (1971). The Court in *Younger* explained: [Our Federalism] does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. *Id.* at 44.

dismiss this case, the court need not hold that under principles of comity, the federal government can never bring an action in federal court to contest a state tax imposed on a private party. There may be situations, for instance, where the tax dispute is ancillary to a larger statutory or constitutional concern. But in this case, the tax dispute is at the center of the action, and there has been no showing that the only party subject to the tax, the members of the Cruise Lines International Association, cannot apply to the state courts for injunctive or emergency relief.

Nor has the federal government demonstrated any extraordinary circumstance or emergency sufficient to set aside the TIA and constitutional requirements of comity. The ports of Hawai'i will not be closed to interstate or international commerce by virtue of the tax. The tax is not patently confiscatory, discriminatory or so onerous it has the power to destroy. The tax is imposed on the same activity and at the same rate as land-based providers of transient accommodations.

## II. Allowing federal jurisdiction over state tax claims based on jurisdiction over federal questions of law would inject chaos into every state's taxing systems.

As described above, it is the nature of state tax laws that they will often implicate some federal constitutional doctrine and in some cases, federal statutes. If federal question jurisdiction under 28 U.S.C. § 1331 were the sole determinant of the United States' ability to challenge state taxes in federal court, the

20

consequences for our federal system of government would be profound.

Jurisdiction would depend on the policy choices of the executive branch as to what laws to challenge and when. Inevitably, federal courts would become the *de facto* overseers of state fiscal and policy choices, as no state tax would be entirely insulated from federal supervision.

Changing administrations may take different views on which state tax laws to challenge, thus eroding state tax predictability. Moreover, the federal government lacks the administrative systems every state employs for ensuring consistent treatment of taxpayers. State systems depend on a synchronized system of assessment, refund procedures, administrative review, negotiation and settlement when a tax is challenged. Federalizing state tax adjudication would deprive the states of the ability to interpret their own tax laws, including the ability to determine the severability of challenged provisions,[11] and craft appropriate remedies.

Allowing the federal government to insert itself midstream into a state's administrative and judicial processes for resolving tax disputes, either at the

---

[11] One of the contentions in the case below concerned the alleged discriminatory impact of including compulsory meals and entertainment charges in the calculation of the Transient Accommodations Tax. A state court could determine that the legislature would have the ability to determine if that provision of the Act was severable from the remainder of the statute. A federal court lacks authority to interpret such issues of state law.

21

request of a petitioning taxpayer or on its own volition, would upend the predictability of state tax collection and administration.

Unfettered federal intervention in state tax cases would also reduce states' political accountability to their citizens. Most significantly, federalizing state taxation would also undermine one core goal of federalism, ensuring a decentralization of government power. In *Murphy v. National Collegiate Athletic Association,* 584 U.S. 453 (2018), the Supreme Court said of our federalist system:

> The Constitution does not protect the sovereignty of States for the benefit of the States or state governments as abstract political entities. To the contrary, the Constitution divides authority between federal and state governments for the protection of individuals. A healthy balance of power between the States and the Federal Government [reduces] the risk of tyranny and abuse from either front.

*Id.* at 473 (*cleaned up*).

## CONCLUSION

All states, not just Hawaiʻi, have great cause for concern with the implications of the federal government's unprecedented intervention in this state tax case. The federal government's interest in addressing federal laws and constitutional issues can be fully vindicated in the state courts. The United States may view this case as presenting an opportunity to challenge long-held precedent regarding the application of comity, to create a new exception to the jurisdictional bar of the TIA, and to reorient two centuries of understanding as to the importance of recognizing concurrent state and federal taxing jurisdiction. This court should

22

decline each of those opportunities.

The Commission respectfully asks this court to dismiss the instant appeal and return this case to the district court for a dismissal of the federal government's suit.

Date: February 25, 2026

/s/ *Bruce Fort*
Bruce Fort

*Attorney of record for* amicus curiae
*Multistate Tax Commission*
**Application for Admission Pending**

23

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** __25-8058_____

     I am the attorney or self-represented party.

     **This brief contains** __5,327_____ **words,** including _____0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a) (5) and (6).

     I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a) (5), Cir. R. 29-2(c) (2), or Cir. R. 29-2(c) (3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/Bruce Fort_____ **Date** __February 25, 2026_____

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit using the Appellate Case Management System (ACMS). I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

*/s/ Bruce Fort*
Bruce Fort

*Attorney of record for* amicus curiae
*Multistate Tax Commission*